JOHNSON BEARD & TRUEB, PC
330 L STREET
ANCHORAGE, ALASKA 99501
PHONE (907) 277-0161
FAX (907) 277-0164

IN THE SUPERIOR COURT FOR THE STATE OF ALASKA

SECOND JUDICIAL DISTRICT AT NOME

JOSHUA MENADELOOK,          )
Individually, as Personal   )
Representative of the Estate of )
THOMAS ELI MENADELOOK,      )
Jr, and as next-friend on behalf )
of B.M., a minor,           )
                            )
        Plaintiffs,         )
                            )
vs.                         )
                            )
Michael Scott, M.D.;        )
Thomas W. Wonderlich, M.D.; )
Jonathon N. Schumaker, M.D.; )
and, Richard M. Kaut, M.D.  )
                            )
        Defendants.         )                    Case No.: 2NO-21-_____CI
_____)

## COMPLAINT

COMES NOW plaintiffs, by and through counsel, and for their Complaint for Medical

Malpractice allege as follows:

1.      At all times relevant hereto, Thomas Eli Menadelook, Jr. [hereinafter "Thomas"]

was an adult residing in or near Nome, Alaska, within the Second Judicial District.

2.      On or about January 15, 2019, Thomas died.

3.      Plaintiff Joshua Menadelook ["hereinafter "Joshua"] was, at all times pertinent, an

adult resident of Fairbanks, Alaska, and the natural son of Thomas.

4.      Samantha Menadelook ["hereinafter "Samantha"] was, at all times pertinent, an

adult resident of Little Diomede, Alaska, and the natural daughter of Thomas.

**Complaint**
*Estate of Menadelook; Case No. 2NO-21-_____CI*

JOHNSON BEARD & TRUEB, PC
330 L STREET
ANCHORAGE, ALASKA 99501
PHONE (907) 277-0161
FAX (907) 277-0164

5.     Celeste Menadelook ["hereinafter "Celeste"] was, at all times pertinent, an adult resident of Golovin, Alaska, and the natural daughter of Thomas.

6.     Casey Menadelook ["hereinafter "Casey"] was, at all times pertinent, an adult resident of Nome, Alaska, and the natural son of Thomas.

7.     B.M. [d/o/b        ] is the natural minor child of Thomas.

8.     Thomas, Joshua, Samantha, Celeste, Casey, and B.M. were/are Alaska Natives.

9.     Joshua, Samantha, Celeste, Casey, and B.M. each received financial support, and other economic support in the form of meat, fish, native foods, other assistance and training, as well as love and emotional support from their father, Thomas.

10.     On or about December 30, 2020, Joshua petitioned for an estate to be opened on Thomas' behalf in the Superior Court for the State of Alaska in the Second Judicial District at Nome, styled In the Matter of the Estate of Thomas Eli Menadelook, Jr., Case No. 2NO-21-01 PR.

11.     Joshua's petition was granted, an estate opened, and Joshua appointed as Thomas' Personal Representative.

12.     Joshua is named as a plaintiff in his capacity as Personal Representative of Thomas' Estate, as next-friend of the minor plaintiff B.M. and individually.

13.     As brother of B.M., Joshua is a fit and proper person to zealously guard said minor's interests and to represent her in the above-captioned action.

14.     To the best of plaintiff's knowledge, information and belief, at all times relevant hereto, defendant Michael D. Scott, M.D. [hereinafter "Dr. Scott"] was and is a licensed physician.

**Complaint**
*Estate of Menadelook; Case No. 2NO-21-_____CI*

JOHNSON BEARD & TRUEB, PC
330 L STREET
ANCHORAGE, ALASKA 99501
PHONE (907) 277-0161
FAX (907) 277-0164

15.     At all times pertinent, Dr. Scott was acting within the scope of his license to practice medicine as a physician, while providing treatment to patients at Norton Sound Health Corporation Hospital Emergency Department, in Nome, Alaska.

16.     At all times pertinent, Thomas was a medical patient of Dr. Scott.

17.     To the best of plaintiff's knowledge, information and belief, at all times relevant hereto, defendant Thomas W. Wonderlich, M.D. [hereinafter "Dr. Wonderlich"] was and is a licensed physician.

18.     At all times pertinent, Dr. Wonderlich was acting within the scope of his license to practice medicine as a physician, while providing treatment to patients at Norton Sound Health Corporation Hospital Emergency Department, in Nome, Alaska.

19.     At all times pertinent, Thomas was a medical patient of Dr. Wonderlich.

20.     To the best of plaintiff's knowledge, information and belief, at all times relevant hereto, defendant Jonathan N. Schumaker, M.D. [hereinafter "Dr. Schumaker"] was and is a licensed physician.

21.     At all times pertinent, Dr. Schumaker was acting within the scope of his license to practice medicine as a physician, while providing treatment to patients at Norton Sound Health Corporation Hospital Emergency Department, in Nome, Alaska.

22.     At all times pertinent, Thomas was a medical patient of Dr. Schumaker.

23.     To the best of plaintiff's knowledge, information and belief, at all times relevant hereto, defendant Richard M. Kaut, M.D. [hereinafter "Dr. Kaut"] was and is a licensed physician.

**Complaint**
*Estate of Menadelook; Case No. 2NO-21-_____CI*

JOHNSON BEARD & TRUEB, PC
330 L STREET
ANCHORAGE, ALASKA 99501
PHONE (907) 277-0161
FAX (907) 277-0164

24.    At all times pertinent, Dr. Kaut was acting within the scope of his license to practice medicine as a physician, while providing treatment to patients at Norton Sound Health Corporation Hospital Emergency Department, in Nome, Alaska.

25.    At all times pertinent, Thomas was a medical patient of Dr. Kaut.

### General Allegations

26.    On or about January 2, 2019, at or near 12:15 p.m., Thomas arrived at the Norton Sound Health Corporation Hospital Emergency Department, in Nome, Alaska [hereinafter "Nome Emergency Department"], with clear signs and symptoms of Botulism food poisoning, and reporting that he and others had become extremely sick after eating "stink beluga flipper" (fermented whale meat).

27.    Other family members arrived at the same Emergency Department at the same time, reporting approximately the same symptoms after eating the same fermented meat.

28.    Defendant, Dr. Scott was assigned to care for Thomas upon Thomas' arrival in the Nome Emergency Department.

29.    Dr. Scott was the physician in charge of providing medical care for Thomas at the Nome Emergency Department on January 2, 2019.

30.    Defendant, Dr. Wonderlich was assigned to care for Thomas in the Nome Emergency Department.

31.    Dr. Wonderlich was one of the physicians in charge of providing medical care for Thomas at the Nome Emergency Department on January 2, 2019.

32.    Defendant, Dr. Schumaker was assigned to care for Thomas in the Nome Emergency Department.

**Complaint**
*Estate of Menadelook; Case No. 2NO-21-_____CI*

JOHNSON BEARD & TRUEB, PC
330 L STREET
ANCHORAGE, ALASKA 99501
PHONE (907) 277-0161
FAX (907) 277-0164

33. Dr. Schumaker was one of the physicians in charge of providing medical care for Thomas at the Nome Emergency Department on January 2, 2019.

34. Defendant, Dr. Kaut was assigned to care for Thomas in the Nome Emergency Department.

35. Dr. Kaut was one of the physicians in charge of providing medical care for Thomas at the Nome Emergency Department on January 2, 2019.

36. Botulism or botulinum toxin is often cited as the most poisonous substance known. In adults, the most common form of transmission is food-borne botulism where the toxin itself is ingested. According to the World Health Organization, homemade fermented foodstuffs are a common source of foodborne botulism.

37. By 12:30 p.m., Dr. Scott gave a differential diagnosis of "Botulism food poisoning" as the cause of Thomas' extreme distress.

38. Standard treatment for botulism poisoning is administration of a botulinum or botulism antitoxin. Patients have better outcomes the earlier the antitoxin is administered. The Center for Disease Control and Prevention advises medical providers that initial diagnosis of botulism poisoning is based on clinical symptoms, and not to wait for laboratory confirmation to begin treatment with antitoxin.

39. Thomas' condition deteriorated.

40. Nome Emergency Department records indicate consultation between Nome Emergency Department and Alaska Native Medical Center [hereinafter "ANMC"] at 4:34 p.m. with recommendation for Botulism antitoxin infusion and transfer to ANMC.

**Complaint**
*Estate of Menadelook; Case No. 2NO-21-_____CI*

JOHNSON BEARD & TRUEB, PC
330 L STREET
ANCHORAGE, ALASKA 99501
PHONE (907) 277-0161
FAX (907) 277-0164

41.   ANMC has far greater resources and is far better equipped and staffed than the Nome Emergency Department and hospital for handling acute and emergency care conditions such as that suffered by Thomas on January 2, 2019.

42.   Thomas was accepted for transfer to ANMC by 4:43 p.m.

43.   Thomas was discharged from Nome Emergency Department and departed Nome by Medivac flight at 11:20 p.m.

44.   The medivac flight arrived in Anchorage at 1:24 a.m. on January 3, 2019.

45.   Thomas arrived at ANMC at 2:15 a.m. on January 3, 2019.

46.   Thomas died on January 15, 2019.   The causes of death were severe anoxic brain injury, multiple cardiac arrests, and botulism with respiratory failure.

47.   On information and belief, no botulism antitoxin was administered to Thomas in the Nome Emergency Department before 4:34 p.m. on January 2, 2019.

48.   On information and belief, the administration of antitoxin to Thomas while he was in the Nome Emergency Department was unreasonably, negligently, and recklessly delayed.

49.   On information and belief, the negligent and reckless delay in administering the antitoxin to Thomas while he was a patient in the Nome Emergency Department was a direct cause of the death of Thomas on January 15, 2019.

50.   On information and belief, the Nome Emergency Department's transfer of Thomas to ANMC was unreasonably, negligently, and recklessly delayed.

51.   On information and belief, the negligent and reckless delay of the Nome Emergency Department in transferring Thomas to ANMC was a direct cause of the death of Thomas on January 15, 2019.

**Complaint**
*Estate of Menadelook; Case No. 2NO-21-_____ CI*

JOHNSON BEARD & TRUEB, PC
330 L STREET
ANCHORAGE, ALASKA 99501
PHONE (907) 277-0161
FAX (907) 277-0164

52.     On information and belief, defendants and each of them failed to provide reasonable and appropriate medical care for Thomas.

53.     The failure of defendants, and each of them, to provide needed and timely medical treatment constituted negligence, and recklessness within the purview of AS 09.55.549(f).

54.     As a direct and proximate result of the negligence and recklessness of defendants, and each of them, Thomas suffered grievously and died.

55.     As a direct and proximate result of the negligent and reckless lapses in medical care heretofore alleged, Thomas suffered pre-death non-economic damages, including but not limited to:

(a)     Physical pain and suffering;

(b)     Emotional distress and psychological injury;

(c)     Inconvenience; and,

(d)     Loss of enjoyment of life.

56.     As a direct and proximate result of the negligent and reckless lapses in care heretofore alleged, Thomas also suffered economic damages, including, but not limited to:

(a)     Expenses for medical treatment and care;

(b)     Burial and/or funeral expenses;

(c)     Loss of earnings and earning capacity;

(d)     Loss of net accumulations;

(e)     Loss of subsistence harvests and subsistence capability; and,

(f)     Loss of household and non-market services, including the ability to perform such services for himself and family members.

**Complaint**
*Estate of Menadelook; Case No. 2NO-21-_____CI*

JOHNSON BEARD & TRUEB, PC
330 L STREET
ANCHORAGE, ALASKA 99501
PHONE (907) 277-0161
FAX (907) 277-0164

57.     Prior to and at the time of his death, Thomas provided direct financial and economic support to Joshua.

58.     Prior to and at the time of his death, Thomas provided care, guidance, love, and emotional support to Joshua.

59.     As a direct and proximate result of the lapses in medical care heretofore alleged, Joshua has suffered, and will suffer, loss of the financial and economic support of his father.

60.     As a direct and proximate result of the lapses in medical care heretofore alleged, Joshua has suffered, and will suffer, loss of parental consortium.

61.     Prior to and at the time of his death, Thomas provided direct financial and economic support to Samantha.

62.     Prior to and at the time of his death, Thomas provided care, guidance, love, and emotional support to Samantha.

63.     As a direct and proximate result of the lapses in medical care heretofore alleged, Samantha has suffered, and will suffer, loss of the financial and economic support of her father.

64.     As a direct and proximate result of the lapses in medical care heretofore alleged, Samantha has suffered, and will suffer, loss of parental consortium.

65.     Prior to and at the time of his death, Thomas provided direct financial and economic support to Celeste.

66.     Prior to and at the time of his death, Thomas provided care, guidance, love, and emotional support to Celeste.

67.     As a direct and proximate result of the lapses in medical care heretofore alleged, Celeste has suffered, and will suffer, loss of the financial and economic support of her father.

**Complaint**
*Estate of Menadelook; Case No. 2NO-21-_____CI*

JOHNSON BEARD & TRUEB, PC
330 L STREET
ANCHORAGE, ALASKA 99501
PHONE (907) 277-0161
FAX (907) 277-0164

68.     As a direct and proximate result of the lapses in medical care heretofore alleged, Celeste has suffered, and will suffer, loss of parental consortium.

69.     Prior to and at the time of his death, Thomas provided direct financial and economic support to Casey.

70.     Prior to and at the time of his death, Thomas provided care, guidance, love, and emotional support to Casey.

71.     As a direct and proximate result of the lapses in medical care heretofore alleged, Casey has suffered, and will suffer, loss of the financial and economic support of his father.

72.     As a direct and proximate result of the lapses in medical care heretofore alleged, Casey has suffered, and will suffer, loss of parental consortium.

73.     Prior to and at the time of his death, Thomas provided direct financial and economic support to plaintiff B.M.

74.     Prior to and at the time of his death, Thomas provided care, guidance, love, and emotional support to plaintiff B.M.

75.     As a direct and proximate result of the lapses in medical care heretofore alleged, plaintiff B.M. has suffered, and will suffer, loss of the financial and economic support of her father.

76.     As a direct and proximate result of the lapses in medical care heretofore alleged, plaintiff B.M. has suffered, and will suffer, loss of parental consortium.

**COUNT I - Negligence, Recklessness, Survival, and Wrongful Death**

77.     Plaintiffs reincorporate paragraphs 1-76, as if fully incorporated, here.

Complaint
*Estate of Menadelook; Case No. 2NO-21-_____CI*

78.    In accordance with Alaska's survival and wrongful death regimes, AS 09.55.570 and .580, defendants and each of them, are liable to plaintiffs for negligence and recklessness in excess of $100,000, the exact amount to be proved at trial.

### COUNT II - Loss of Parental Support and Consortium

79.    Plaintiffs reincorporate paragraphs 1-76, as if fully incorporated, here

80.    Defendants and each of them are liable to plaintiffs for the loss of parental support and consortium in excess of $100,000, the exact amount to be proved at trial.

WHEREFORE, plaintiffs pray for relief from defendants and each of them, as follows:

1)    for total monetary damages within the jurisdiction of this Court, the exact amount to be proven at trial;

2)    for costs, interest, and attorney's fees; and

3)    for such other and further relief as the Court deems equitable and just under Alaska Statutes, the Court Rules, and in accordance with the allegations above.

DATED this 13ᵗʰ day of January, 2021 at Anchorage, Alaska.

JOHNSON BEARD & TRUEB, PC

Douglas G. Johnson, ABA #9511061
Attorney for Plaintiff

JOHNSON BEARD & TRUEB, PC
330 L STREET
ANCHORAGE, ALASKA 99501
PHONE (907) 277-0161
FAX (907) 277-0164

**Complaint**
*Estate of Menadelook; Case No. 2NO-21-_____CI*

Exhibit A
Page 10 of 10
Page 10 of 10

Case 2:21-cv-00001-TMB   Document 1-1   Filed 05/12/21   Page 10 of 10